UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JAMES M. COOPER,                      Case No. 1:16-cv-568

      Plaintiff,                            Barrett, J.
                                       Bowman, M.J.

  v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff James Cooper filed this Social Security appeal in order to challenge the Defendant's denial of his disability claim. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents four claims of error. For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED.

**I. Summary of Administrative Record**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") in August 2012, alleging that he became disabled on January 5, 2010 due to a combination of physical and mental limitations, with his most severe impairments identified as cardiac and pulmonary in nature. (Tr. 35). After Plaintiff's applications were denied initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").

A hearing was held in Cincinnati, Ohio on September 9, 2014 before ALJ John Prince. Plaintiff appeared with his attorney and gave testimony, as did a vocational expert ("VE"). (Tr. 30-55). On September 18, 2014, ALJ Prince issued a written

1

decision concluding that Plaintiff was not disabled. (Tr. 11-23). The Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner. Plaintiff filed this case in order to seek federal judicial review of the ALJ's non-disability determination.

Plaintiff has an eighth grade education, with past relevant work as a janitor. On the alleged disability onset date, Plaintiff was still a "younger individual" at 47 years old, although he moved up to the age category of closely approaching advanced age (50 to 54) on November 12, 2012. (Tr. 21) There is no dispute that Plaintiff cannot perform his past relevant work, which was performed at the medium exertional level.

The ALJ determined that Plaintiff suffers from severe impairments of "lumbosacral degenerative disc disease, arteriosclerotic coronary disease, a chronic airway obstruction, an anxiety disorder, and borderline intellectual functioning. (Tr. 13). However, the ALJ determined that Plaintiff did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff was entitled to a presumption of disability. (Tr. 17). Instead, the ALJ found that Plaintiff retained residual functional capacity ("RFC") to perform a limited range of light work with the following restrictions:

> He can stand and/or walk with normal breaks for six hours in an eight-hour workday. He can sit with normal breaks for six hours in an eight-hour workday. He is unable to climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs. He can balance, stoop, kneel, crouch, and crawl occasionally. He should avoid concentrated exposure to extreme cold, extreme heat, wetness, and humidity. He should avoid even moderate exposure to fumes, dusts, gases, and poor ventilation. He should avoid all exposure to hazards such as dangerous machinery and unprotected heights. He is capable of performing simple, routine tasks of no more than 1-3 steps with no demands for fast pace. He can have no more than intermittent, superficial contact with the public. He can have no more than occasional, superficial contact with coworkers, and can have no close supervision.

2

(Tr. 18). Based on the testimony of the vocational expert, the ALJ determined that Plaintiff still could perform a substantial number of jobs in the national economy, including the representative unskilled occupations of cleaner/housekeeper, assembler of small products, and inspector. (Tr. 22). Based on additional VE testimony, the ALJ determined that even if additional restrictions were added to limit Plaintiff to walking not more than 200 feet at a time with a 15-minute break, Plaintiff could still perform the jobs of assembler or inspector. (*Id.*)

In his Statement of Errors, Plaintiff argues that the ALJ improperly evaluated the medical evidence by giving too much weight to non-examining physicians who reviewed an incomplete medical record, and by failing to give controlling weight to the opinion of a treating physician. Plaintiff further argues that the ALJ's RFC finding, and that the ALJ's negative assessment of Plaintiff's credibility are not supported by substantial evidence. (Doc. 10 at 1). None of the asserted errors requires reversal.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

Whether considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

### B. Plaintiff's Assertions of Error

Plaintiff's claims of error focus on the ALJ's evaluation of his physical limitations. Plaintiff asserts no error with respect to the mental limitations determined by the ALJ; therefore, any error concerning those limitations has been waived.

### 1. Weight Given to Consulting Physicians

Most of the medical opinion evidence was offered by agency consultants who reviewed the medical records that had been submitted by Plaintiff. Only one of the psychological consultants, Richard Sexton, Ph.D., examined Plaintiff. (Tr. 363-370). Plaintiff first argues that the ALJ erred when he gave "great weight" to two physical RFC opinions of non-examining consulting physicians, because their review was based on a less-than-complete medical record. The ALJ adopted most of Plaintiff's RFC from the various consulting opinions, although the ALJ found Plaintiff to have slightly greater mental limitations than determined by Dr. Sexton.

Elaine M. Lewis, M.D. offered opinions concerning Plaintiff's physical limitations based upon a review of Plaintiff's records through October 5, 2012 (Tr. 64), and Eli Perencevich, D.O., offered opinions on January 29, 2013. (Tr. 80). Plaintiff argues that both physicians' opinions were unreliable, because they did not have the opportunity to

5

consider approximately 400 pages of other medical records submitted after they rendered their opinions.[1]

The tardy records submission appears to have occurred as a result of a change in counsel. From October 2012 through February 2014, Plaintiff was represented by Frank Wermeling, of Covington, Kentucky.[2] During the period of representation by Mr. Wermeling, including prior to the final review of Plaintiff's records by Dr. Perencevich, an agency representative contacted Plaintiff's counsel several times to ask about current treatment and changes to treatment, and to request updated records. Mr. Wermeling stated that he would gather and provide additional information, but no additional information was ever submitted or received. (Tr. 75).

After Mr. Wermeling died, Plaintiff retained new counsel, who submitted more than 400 pages of additional medical records. Plaintiff does not cite or discuss specific records other than to state that they included "records from Dr. Shahla Mallick, University Hospital and Dearborn Country [sic] Hospital, as well as updated records from Dr. Castro-Borobio and Good Samaritan Hospital." (Doc. 10 at 4).

While the consulting physicians may not have had access to the late-submitted records, the ALJ himself clearly considered them. In fact, he specifically discussed most of the referenced records in the summary of medical evidence included in his opinion. (*See generally* Tr. 14-16). The undersigned finds no reversible error in the ALJ's reliance on the opinions of the consulting physicians. Plaintiff fails to cite to any specific record, or to explain how any of the records would undermine the physical RFC

---

[1]Both Dr. Lewis and Dr. Perencevich rejected treating source statements by Manuel Castro [presumed to be Castro-Bolobio], M.D., and by Jason Smith, M.D., dated September 12, 2012 and May 31, 2012, respectively, as based upon "an issue reserved to the Commissioner," (*see* Tr. 82). Plaintiff does not cite to or rely on those statements in this appeal.
[2]Public records reflect that Attorney Wermeling passed away in February 2014. The same information is reflected in the administrative record. (Tr. 240).

6

findings determined by the consulting physicians, which the ALJ adopted only after considering the additional records.

Plaintiff generally references more than two hundred pages of records from University Hospital that were not provided until January 2013. (*See generally* Tr. 641-847). Again, many of these records were discussed in some detail by the ALJ. (*See* Tr. 14, discussing examination findings at Exhibits 17F, 18F, and 24F; *see also* Tr. 16, discussing Exhibits 9F, 13F, 14F, 21F, 22F, and 23F). Moreover, most of the University Hospital records are of marginal relevance insofar as they are dated years prior to Plaintiff's alleged onset of disability in 2010. (*See, e.g.*, Tr. 641-774, records dated 2002-2007). Other records within the alleged disability period relate to temporary conditions unrelated to any severe impairment for which Plaintiff is claiming disability, such as treatment for a possible UTI and/or STD after Plaintiff returned home from a trip to the Philippines, where symptoms began after he had unprotected sex. (Tr. 777-778).

Plaintiff's other references to records not reviewed by the consulting physicians are similarly vague, and fail to persuade the undersigned that they would have had any impact whatsoever on the consulting physicians' RFC evaluations or the limitations adopted by the ALJ. For example, Plaintiff points generally to records he describes as reflecting Plaintiff's stenting procedure and accompanying diagnostic tests. (Tr. 609-636). Many of those records reflect only blood test results, without analysis. (*See* Tr. 609-612). A May 2, 2013 diagnostic record consists of imaging of Plaintiff's thyroid.[3] (*See* Tr. 613-616). Plaintiff does not explain how such records would have impacted his physical RFC if they had been considered by the consulting physicians.

---

[3]Plaintiff does not claim any severe impairment relating to his thyroid.

7

More relevant to Plaintiff's severe impairments is a single record dated December 20, 2012, that reflects x-ray findings that support a history of chronic airway disease. However, that record also does not suggest any impact on Plaintiff's RFC, which already took into account Plaintiff's chronic airway obstruction. The record reflects "normal" "Heart and Mediastinum" and "Focal lingular scarring or atelectasis" in the lungs with "No acute findings." (Tr. 617-620). Other records not considered by the consulting physicians arguably would support fewer limitations than determined by the ALJ. For example, vascular exam records dated June 2012 reflect "normal" findings with some tests actually showing improvement from an earlier February 2012 study, and "no evidence of obstructive lung disease." (Tr. 621-624).

The last records to which Plaintiff points as not included in the body of medical records reviewed by the consulting physicians document a knee injury in March 2006, nearly 4 years prior to Plaintiff's alleged onset of disability. (Tr. 638). Plaintiff underwent surgical repair of that injury in May 2006, (Tr. 664-665), and does not claim any severe knee impairment.[4] In any event, the knee injury records also were discussed by the ALJ. (Tr. 16).

The fact that the consulting physicians did not review the late-submitted records does not mean that the ALJ was required to reject the consultants' opinions. The ALJ's decision to give the consulting opinions "great weight" remains supported by substantial evidence in the record as a whole. Plaintiff has failed to demonstrate how any of the records would have impacted the consultants' opinions. More importantly, the ALJ clearly considered <u>all</u> relevant records, discussing many of the records that post-dated the consultants' opinions, but that supported their RFC opinions. As the ALJ explained,

---

[4]Plaintiff does allege pain that radiates into his legs, secondary to his back pain.

8

the records confirmed that Plaintiff had been non-compliant with medications and continued to smoke cigarettes against medical advice. In one record dated May 2012, Plaintiff stated that his chest pain had largely resolved, though he had experienced an episode while trying to change a tire on a hot, humid weekend. (Tr. 15, citing Exhibit 3F). Objective testing (an echocardiogram) in January 2013 was normal. (*Id.*; *see also generally* Tr. 15-16, discussing records from 2012-2014).

The Defendant Commissioner discusses many of the same records in more detail. (*See generally,* Doc. 13 at 4-6). Based on a review of the totality of the evidence, the undersigned agrees that substantial evidence supports the RFC opinions of the consulting physicians and the corresponding RFC defined by the ALJ.

### 2. The Assessment of the Opinion of Plaintiff's Treating Physician

Plaintiff's second assertion of error criticizes the ALJ's decision to give only "some weight" to the opinion of Dr. Mallick, MD, who was Plaintiff's treating pulmonary specialist at the time of his hearing. Plaintiff claims that the ALJ "downgraded the weight given to this specialist because she had only seen, examined and treated Mr. Cooper on two occasions." (Doc. 10 at 5, citing Tr. 21). Plaintiff argues that this is contrary to the regulatory scheme, which requires the Commissioner to give "controlling weight" to the opinions of treating physicians. However, the undersigned finds no error upon closer review of Dr. Mallick's opinions and the ALJ's analysis of those opinions.

The relevant regulation regarding treating physicians provides: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. §404.1527(c)(2); *see also Warner v. Com'r of Soc.*

9

*Sec.,* 375 F.3d 387, 390 (6th Cir. 2004); SSR 96-2p. The Commissioner is required to provide "good reasons" if the Commissioner does not give controlling weight to the opinion of a treating physician. *Id.*

Dr. Mallick partially completed a Physical RFC statement at Plaintiff's request on March 25, 2014 that included limitations that would have been work-preclusive, due to the inclusion of weight restrictions that suggested Plaintiff could lift 5 pounds only occasionally, could lift 10 pounds rarely, and could carry less than 5 pounds. (Tr. 560). It is clear from the way in which Dr. Mallick completed the form that she relied solely upon Plaintiff's subjective statements concerning those limitations. She carefully explains that she has seen Plaintiff only once per year, for a total of two 20-minute appointments. (Tr. 550). She lists as her only diagnoses: "Dyspnea, Anxiety, Tobacco abuse." (*Id.*) In response to a query asking about her patient's "**most significant clinical findings and objective signs**" she lists "anxiety," which would not support the referenced weight restrictions. (*Id.*, emphasis original).

It is notable that Dr. Mallick expressly declined to complete most of the form on the basis that she could not accurately answer the vast majority of the questions. The questions left blank included questions about how far she would estimate Plaintiff could walk, climb steps, balance, stoop, crouch, bend, how much he would be required to lie down before needing to sit up, stand up, or walk around, how long he would need to lie down or recline in an 8-hour day, how long he could sit, how long he could stand/walk, whether he would need unscheduled breaks, whether he needed to elevate his legs, whether he had need of an assistive device, or limitations with reaching, handling or fingering, pushing/pulling or use of leg controls, and any psychological or mental limitations. (Tr. 561-563). She also declined to respond to questions about how often

10

Plaintiff would be "off-task" or absent from work, and questions concerning his ability to perform work on a sustained basis. (Id.)

Dr. Mallick expressly declined to provide any opinion that Plaintiff was unable to work fulltime. (Tr. 563). When asked a related question if her patient's symptoms and limitations have lasted since 2010 when he claimed he could no longer work, Dr. Mallick did not check either the boxes for "yes" or even "probably," but instead ascribed to the more ambivalent response of "possibly." (Tr. 560).

Plaintiff relies upon a section in which the form asks the treating source to specify limitations on walking. However, rather than completing the questions to reflect any opinions <u>she</u> held as his physician, Dr. Mallick wrote a marginal note stating: "<u>Pt tells me</u> that he can't walk inside home [with Short of Breath]." (Tr. 561, emphasis added). Further stressing her cautious reliance on her patient's subjective reports, she reiterated her limited relationship with Plaintiff, and explained that her own tests did not validate his claimed limitations: "I have seen pt. only twice and his Pulmonary Function Test in 2012 is normal. <u>His symptoms are out of proportion of his PFT</u>. Not sure if anxiety plays a role. Can't answer all above questions." (Tr. 563, emphasis added).

Having reviewed the substantial medical evidence that undercut Dr. Mallick's opinions, including Dr. Mallick's own examination records and a multitude of other medical records that showed mostly "normal" pulmonary functioning, the ALJ explained that he was giving "some weight" to her opinions "to the extent that the claimant [did] have pulmonary restrictions and lifting restrictions." (Tr. 21). However, he discounted Dr. Mallick's lifting restrictions as well as the Plaintiff's statement concerning his alleged extreme walking restrictions, on the basis that was "the claimant's statement, and not an observation of the doctor." With respect to the lifting restrictions, the ALJ noted Dr.

11

Mallick's own conclusion that Plaintiff's symptoms were out of proportion to his pulmonary tests, which "cast doubt on the validity of Dr. Mallick's exertional assessment, which limits the claimant to a less than full range of sedentary work apparently based primarily on self-report." (Tr. 21; *see also* Tr. 267, 543-545, 563). The ALJ's discounting of Dr. Mallick's opinions reflect an appropriate assessment that the lifting and walking opinions were not entitled to controlling weight, because they were not well-supported and were not consistent with other substantial evidence of record.[5] The ALJ's articulated reasons are fully supported by substantial evidence in the record, and therefore constitute "good reasons" to afford only "some weight" to the referenced portions of Dr. Mallick's opinions.

Within the same claim of error, Plaintiff briefly complains that "no mention was made of Mr. Cooper's other treating sources," including Dr. Manuel Castro-Borobio. That complaint is flatly refuted by examination of the ALJ's opinion, which includes specific discussion of multiple treatment records from Dr. Manuel Castro-Borobio, a primary care physician. (Tr. 14, citing Exh. 7F, 8F; Tr. 15, citing Exh. 7F, 8F, 21F; and Tr. 16, citing Exh. 21F). In a cursory argument that contains no discussion of any specific records, Plaintiff also claims that the ALJ "did not mention or assign any weight to [the] reports" of Chung Wang and Scott Friedstrom. Plaintiff provides no citation to any such "reports," or to any other records of Drs. Wang or Friedstrom. The index of the administrative record does not include either name, but both appear to have practiced in the same primary care group as Dr. Manuel Castro-Borobio, whose records

---

[5]Plaintiff gave inconsistent statements about his own ability to lift weight. (*See* Tr. 222, estimating on application dated 8/8/12 that he could lift "15 lbs maybe"), At the hearing, Plaintiff testified that since 2012 he had been restricted to lifting only "2 pounds," but that prior to 2012 (which would include 2 years of his disability period) that he could lift 80-100 pounds. (Tr. 43-44). As discussed below, the ALJ did not find Plaintiff to be fully credible.

12

were discussed in detail by the ALJ. Neither Dr. Wang's clinical notes nor those of Dr. Friedstrom undermine the RFC determined in this case. In addition, to the extent both physicians' records were included in Exhibit 4F, that exhibit was also cited by the ALJ.

Frankly, Plaintiff's argument is so cursory and lacking in citation as to be arguably waived. However, having located and examined the clinical records of Drs. Friedstrom and Chung, the undersigned confirms no error exists. On June 12, 2012, Dr. Wang examined Plaintiff for a general check-up, noting he was in "no distress," with "normal" breathing sounds," no respiratory distress, and many other normal findings including normal range of motion, despite complaints of chest pain, shortness of breath, and back and leg pain. (Tr. 274-278). Dr. Wang prescribed a continuation of the same medications, and encouraged Plaintiff to quit smoking. He also ordered several tests, which ultimately revealed normal results. Dr. Friedstrom affirmed his assessment on June 13, 2012. (Tr. 274).

On July 10, 2012, Plaintiff was seen by Dr. Castro-Borobio for leg pain, which Plaintiff reported with walking on "any type of surface," and described as "not radiated, dull, moderate, and bilateral." (Tr. 269). Tests showed ankle-brachial indices in each leg were "both normal." (Tr. 271). Plaintiff's breath sounds also were "normal" with no respiratory distress, and Plaintiff appeared "well-developed, well-nourished, and in no distress." (*Id.*) A note from Dr. Friedstrom dated July 11, 2012 confirmed Plaintiff's subjective complaints of "pain in his legs when he walks more than one block, which he is unable to do because of his breathing." (Tr. 269). Notwithstanding those subjective reports, Dr. Friedstrom again noted "normal" clinical findings and his agreement with "the plan of care as described by Manuel Castro-Borobio, MD. Patient need[s] to stop smoking, and he says he knows and is working on it." (*Id.*)

13

### 3. Substantial Evidence Supports the RFC Determined by the ALJ

Plaintiff's third argument is that the physical RFC determined by the ALJ is not supported by substantial evidence. Plaintiff cites to virtually no objective evidence or even clinical findings by any physician to support his argument, but instead relies almost exclusively upon his own <u>subjective</u> reports, such as the pain in his legs reported at check-ups in June/July 2012, as discussed. (*See* Tr. 269).

The ALJ's RFC findings are well-supported by substantial evidence, including clinical records, imaging studies, and objective evidence, as well as consideration of Plaintiff's daily activities and other evidence of record. For example, countering Plaintiff's reliance on a single record that reflected his shortness-of-breath complaint to his primary care physician in December 2012, (see Tr. 467), a follow-up record by the same physician shows a referral to pulmonology, which revealed only "mild" obstructive airway disease. (Tr. 463).

Plaintiff cites his own hearing testimony that he could walk only 200 feet. (Tr. 43). However, the ALJ determined that Plaintiff was not fully credible.[6] Last, Plaintiff relies on the records discussed above, in which Dr. Mallick recorded his subjective complaints, including an April 2013 report of shortness of breath for three years, worse in the previous year, with trouble "talking and performing his daily activities." (Doc. 10 at 7, citing Tr. 543). In the same visit, however, Dr. Mallick noted that objective and clinical findings contrasted sharply with Plaintiff's subjective complaints: "His pulmonary function tests [do] not reveal any obstructive lung disease. I cannot explain his [shortness of breath] dyspnea on the basis of his PF[T] unknown. His severity of his

---

[6]The ALJ alternatively found based on VE testimony that even if Plaintiff could not walk more than 200 feet without taking a 15 minute break, he still could perform a substantial number of jobs in the national and regional economy at the "light" exertional level. (Tr. 22).

14

symptoms is out of proportion. His chest x-ray looks clear." (Tr. 545). The ALJ discussed other records that reflected either no or only mild pulmonary and cardiovascular symptomology). (*See* Tr. 14-16, 312, 427, 444, 510, 545, 556-57, 559, 856-57. 1007). Other records confirmed mostly normal breathing and heart functioning. (Tr. 14-17, 20, 265, 267, 271, 282, 391-92, 404, 453, 519-20, 544-56, 821, 940, 994, 1006). Consistent with this evidence, Plaintiff never was hospitalized for respiratory symptoms.

Plaintiff points to an October 2013 record where he reported pain in both knees when walking or bending them, which knee pain was chronic and unchanged. However, Plaintiff does not assert error with the ALJ's determination that his knee impairment was non-severe, nor would the record support any greater knee-related restrictions based upon the referenced records.

Plaintiff makes much of his subjective complaints of back and leg pain. However, the ALJ discussed all relevant evidence in great detail. Plaintiff reported having undergone back surgery in 1992, but there were no records relating to that surgery, and Plaintiff underwent no further surgery. The ALJ referenced his subjective complaints of pain at the maximum level of 10 on the pain scale, but found "pain of that magnitude would presumably require emergency inpatient hospitalization, and the file contains no such records." (Tr. 20). Instead, as discussed above, Plaintiff's records reflect numerous examinations in which physicians documented "no distress." (*See also* Tr. 14, discussing Plaintiff's records which included reports in March 2012 of only stiffness without shooting pain, with no significant tenderness, and image studies showing only moderate findings, mostly at the L3-4 level). The ALJ discussed the records that corroborated Plaintiff's pain reports to some degree, dated September through

15

November 2012, and February through July 2014, but explained why they did not support the level of impairment claimed by Plaintiff. Instead, imaging studies reflected mild to moderate findings, and clinical examinations showed some tenderness and pain, but a normal gait, normal sensation, and normal strength and reflexes. (*See* Tr. 14-17, 20, 265, 297-98, 404, 453, 519-520, 544-45, 821, 940-41, 971-73, 994, 1006-07). In February 2014, Plaintiff reported that his back pain radiated into his legs, but presented itself at night and not at all during the day. (Tr. 14, citing Exhibit 8E).

One of the records on which Plaintiff relies in this judicial appeal is his report of severe back pain with pain radiating into his legs "rated ten out of ten" to Dr. Kevin Kohan. (Doc. 10 at 8). Although Plaintiff fails to provide any citation to this Court, the same record was discussed by the ALJ, who noted that Plaintiff's pain improved with medications and that a corresponding MRI showed only mild-minimal disc bulges with mild foraminal stenosis. (Tr. 14 citing Exh. 20 at Tr. 939). Contradictorily, Plaintiff reported at the same visit that his extreme back pain "has essentially been the same without any improvement," and that it has "never really improved after [his 1992] surgery." (Tr. 939). Considering that Plaintiff does not claim disability until 2010, the claimed level of unrelenting back and leg pain for 20 years is improbable at best, and clearly contradicted by multiple records. In short, none of Plaintiff's selective citations to his reported subjective complaints undermines the substantial evidence that supports the RFC as determined.

### 4. The ALJ's Credibility Determination

In his final assignment of error, Plaintiff argues that the ALJ failed to comply with SSR 96-7p and 20 C.F.R. § 404.1529 in evaluating his credibility. I find no error. An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's

findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d at 387, 392 (6th Cir. 2004).

Observing Plaintiff's demeanor and evaluating his testimony in this case, the ALJ specifically found that Plaintiff was only "partially credible" and that his subjective complaints about the intensity, persistence and limiting effects of his symptoms "are not entirely credible." (Tr. 19). The ALJ noted Plaintiff's "medical history and activities are inconsistent with allegations of disabling impairments." (*Id.*; *see also* Tr. 17, noting Plaintiff's ability to take out trash, perform chores, do dishes, drive). The ALJ cited multiple inconsistencies, including the fact that he alleged a disabling mental impairment, but had never been hospitalized for a mental impairment, or treated by a psychiatrist or psychologist. (Tr. 19) He claimed disabling respiratory problems, but objective testing in 2012 showed no obstructive lung disease at all, and a similar test from 2013 showed only a mild to moderate defect. (*Id.*) The ALJ also pointed to specific statements that Plaintiff made to his physicians that were inconsistent with disabling respiratory symptoms. (*Id.*). Similarly, the ALJ pointed to reports that after stenting, Plaintiff's chest pain largely resolved. (Tr. 20). The ALJ stated that Plaintiff's "noncompliance with treatment does not help his credibility," including Plaintiff's continuation of smoking against medical advice, his leaving an emergency room against

17

medical advice in September 2010, and failure to take prescribed medications. (Tr. 20). In the context of a positive drug test from July 2012, the ALJ noted that Plaintiff has a criminal history which includes incarceration for drug trafficking, and a "variable earnings history" that also did not help his credibility. (*Id*).

Almost none of the myriad reasons for the adverse credibility finding are challenged by Plaintiff in this appeal. Instead, Plaintiff challenges only the ALJ's reference to his travel, and to the positive drug test, as improper. The undersigned would find substantial evidence to uphold the adverse credibility finding even if the drug test and travel were not considered. However, the undersigned also finds no error in consideration of those factors.

The ALJ noted that Plaintiff's travel "to the Philippines in 2010 and …to Florida in July 2013…are not activities consistent with allegations of disabling impairments." (Tr. 20). Plaintiff argues that the ALJ should not have referenced that trip, because it "occurred in 2010, before Mr. Cooper testified that his condition substantially worsened in 2012." (Doc. 10 at 9). But Plaintiff alleges his disability began in January 2010. Therefore, the ALJ's consideration of his international travel during the alleged period of disability was proper. Plaintiff also complains about the ALJ's reference to his planned two-month trip to Florida in July 2013, arguing that "Mr. Cooper was given no opportunity to testify about whether he actually went to Florida, his purpose in going there, or his limitations while there." (Doc. 10 at 9). Plaintiff does not deny taking the trip, or point to any rationalization or evidence that would undercut the ALJ's reliance on that trip as one among many factors inconsistent with Plaintiff's disability claim. Plaintiff was represented by counsel at the hearing, and if Plaintiff believed that the record required further development, it was incumbent upon him to provide that evidence.

18

Plaintiff additionally argues that the ALJ erred when he found Plaintiff's statement that he had not used drugs in 25 years to be inconsistent with a July 2012 drug test that was positive for benzodiazepines, amphetamines, and opiates. (Tr. 20). Plaintiff points out that he testified that he had been prescribed opiates. When questioned, he also testified that the positive result for amphetamines was caused by another unspecified but prescribed medication. (Tr. 49). Plaintiff further argues that because his primary care physician continued to prescribe narcotic medication after July 2012 and because amphetamine use is not listed in his cardiac records as a risk factor, the ALJ should have ignored the positive drug test. However, the Defendant persuasively points out that the medical record does not plainly show that he was prescribed any of the medications he tested positive for in July 2012. The ALJ was not required to accept Plaintiff's self-serving testimony in light of Plaintiff's prior history of drug trafficking and the many other factors that undercut his credibility. In conclusion, while I find no error in consideration of the drug test, other substantial evidence exists to support the credibility determination even if the drug test had not been considered.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFIRMED** as supported by substantial evidence, and that this case be **CLOSED.**

                                                     */s Stephanie K. Bowman*
                                                    Stephanie K. Bowman
                                                    United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| JAMES M. COOPER, | Case No. 1:16-cv-568 |
| Plaintiff, | Barrett, J. |
| | Bowman, M.J. |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).